Southwood vs. Myers.

CASE 56—PETITION ORDINARY—SEPTEMBER 18.

## Southwood vs. Myers.

APPEAL FROM LINCOLN CIRCUIT COURT.

1. The alleged grounds of attachment being controverted and unsustained by the evidence, the circuit court erred by overruling a motion to discharge the attachment.

2. To enforce an alleged lien on the baggage, &c., of a guest for charges for lodging, &c., the plaintiff must allege, in his petition, that he is a tavern-keeper. The allegation that he "is a landlord, proprietor of the Myers House," is insufficient.

3. Insufficient allegations cannot be supplied by evidence.

4. A person who keeps a mere boarding-house or lodging-house, or even one who keeps a house for lodging strangers for a season, as visitors to watering-places, unless he be the keeper of a tavern, has not the privilege of retaining the goods of his guests until his charges for lodging, &c., are paid.

5. No allowance should be made to an attorney appointed to defend for a non-resident, where no report is made by him of duty performed or services rendered.

6. The cost of levying the attachment and selling and collecting the proceeds, should not be taxed and allowed against the defendant, when the attachment ought to have been discharged for want of evidence sustaining the grounds upon which it was sued out.

7. The judgment of the circuit court sustaining the attachment being reversed by the court of appeals, on the return of the case the circut court is directed to deduct the costs of defending the attachment in that court and prosecuting the appeal, from the debt sued on, and to pay the residue of the debt out of the proceeds of the sales of the attached property.

GEO. R. McKEE,                                    For Appellant.

CITED—

*Civil Code, sec.* 222, *subsec.* 3; *sec.* 221, *subsec.* 6.
1 *Smith's Leading Cases, side p.* 52, *top p.* 121.
*Bac. Abr., " Inns," C.,* 5.
*Sol.,* 388; *Parkhurst vs. Foster.*

JOHN S. VANWINKLE and

H. T. HARRIS,                                        For Appellee,

CITED—

*Civil Code, secs.* 12, 239.

*Story on Bailments, secs.* 475–6–7.

*Act of March* 9, 1854, 1 *Stanton,* 496.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

To enforce the collection of a debt of sixty-nine dollars and fifty cents, this action was brought in the court below by appellee against appellant, and, in his petition, he alleges " that he is a landlord, proprietor of the Myers House, and that his account was created for board as alleged, and that defendant left his house aforesaid without paying the same, or any part thereof, and claims his lien on defendant's baggage, which he has now in his possession." It is also alleged in the petition that appellant was a non-resident of Kentucky, and that he had departed from this State *without leaving sufficient property* therein to satisfy plaintiff's claim.

Upon the allegations of the petition, an attachment was sued out, and levied upon a trunk and contents, consisting of female wearing apparel and some bed clothing, and other articles, all of small value.

An order of warning was entered, and J. C. Cooper was appointed corresponding attorney on the 18th of February, 1867, the day upon which the attachment was sued out.

On the 25th of March, 1867, the cause was submitted, and a judgment rendered for a sale of so much of the attached property as would be required to pay appellee the sum of sixty-nine dollars and fifty cents, and twenty dollars costs of suit; and J. P. Bailey appointed commissioner to make the sale.

Southwood vs. Myers.

At the following June term of the court, appellant
filed his answer and denied that he was, at the institu-
tion of the action, a non-resident, or had, since then,
departed from the State, and controverted plaintiff's
claim to a lien on his baggage.

The commissioner made a report of the sale of the
attached property, from which it appears he sold the
whole of it, which had been appraised to one hundred
and fourteen dollars and twenty-five cents, and sold for
one hundred and one dollars and sixty-five cents; the
sale was approved; the commissioner, who was the
sheriff, was allowed ten dollars for levying the attach-
ment, and for selling and collecting the proceeds; and
Cooper, the appointed corresponding attorney, was al-
lowed five dollars. This was done at the April term,
1868, and appellant moved to discharge the attachment;
but his motion was overruled, and a personal judgment
rendered against him for the debt, viz : sixty-nine dol-
lars and fifty cents, to be paid out of the funds in the
hands of the commissioner; and appellant seeks a re-
versal of that judgment.

It is in evidence that appellant had been residing and
keeping house in Lincoln county, in a very humble way,
it may be; and although he may sometimes have said
he had a home in Wisconsin, and intended to go there
when he could get the means to take him, still he had
a habitation in Kentucky, and had been conducting a
saw-mill in Lincoln county up to a short time before
he went to appellee's to board. The evidence failed,
therefore, to show the non-residence of appellant; and,
even if the alleged grounds for the attachment, because
of his departure from the Commonwealth, had been
sufficient to authorize an attachment, they were not
sustained by the evidence, and neither of these grounds

were sustained. · Whether the allegations of the petition are sufficient to entitle appellee to a lien on the baggage of appellant for the satisfaction of his debt, is the only remaining question to be settled.

As innkeepers are bound by law to take in all travelers and wayfaring persons who conduct themselves properly, and to entertain them, and guard their goods with proper diligence for reasonable compensation, so the law invests them with some peculiar privileges, amongst which is, that he has a lien upon the goods of his guests for their board, lodging, and the liquors supplied them. (*Story on Bailments, sec.* 476.) To what extent the personal clothing of the guests may be subjected to this lien, need not now be decided.

An innkeeper is defined to be a person who makes it his business to .entertain travelers and passengers, and provide · lodging and necessaries for them, their attendants and horses, for a reasonable compensation. (*Bacon's Abr., "Inns and Inn-keepers, B."*) A man may, however, be an innkeeper, and liable as such, though he have no provision for horses; nor is it necessary that he should have a sign, indicating that he is the keeper of an inn; but it must be his business to entertain travelers and passengers. (*Kister vs. Hildebrand,* 9 *B. M.,* 72.)

By the common law any person might keep a tavern without control; but in England that right has been limited by statute, and those only who have obtained license therefor can keep inns; and in Kentucky, and perhaps all the States of the Union, inns and taverns are under statutory regulations.

In this State no person is allowed to keep a tavern or inn, unless he shall have first obtained a license therefor from the county court of the county in which the tavern s to be kept. (1 *vol. R. S.,* 404.)

Southwood vs. Myers.

The words tavern-keeper or innkeeper, therefore, in Kentucky, have a technical meaning and special application, and this peculiar privilege of retaining the goods of their guests until their charges for lodging, &c., are paid, is confined to them. A person who keeps a mere boarding-house or lodging-house, or even one who keeps a house for lodging strangers for a season, as visitors to watering-places, unless he be the keeper of a tavern, has not this privilege.

If, therefore, it had been alleged in the petition 'that appellee was a tavern-keeper, and that debt had been contracted by appellant as his guest for necessaries, lodging, &c., it would have been sufficient; but to merely allege that he was " *a landlord, proprietor of the Myers House*," and his account was created for board, may all be true, and still he not be the keeper of a tavern, compelled to entertain and lodge all who call upon him for that purpose, who conduct themselves properly, but may be the keeper of a private boarding-house, under the name of the Myers House; nor could the insufficient allegations be supplied by evidence. As, therefore, appellee did not state facts in his petition sufficient to entitle him to a lien, the attachment should have been discharged; nor was it proper to have taxed him with five dollars, the allowance to Cooper as corresponding attorney, who has not made any report of duty performed or services rendered; nor should he have been adjudged to pay the costs of levying the attachment, and selling and collecting the proceeds; besides, the commissioner was required, by the judgment, to sell enough of the goods only to pay appellee's debt, sixty-nine dollars and fifty cents, and twenty dollars for costs, making eighty-nine dollars and fifty cents in all, and he sold all of them, amounting

to one hundred and one dollars and sixty-five cents, thereby transcending his authority.

The judgment must, therefore, be *reversed*, and the cause remanded, with directions to discharge the attachment; but, as the proceeds of the sale of the goods are under the control of the court, and it is proper to make an end of this litigation, the court below will, after deducting from appellee's debt of sixty-nine dollars and fifty cents appellant's costs of defending the attachment incurred in that court, and his costs in this court therefrom, he will order the residue of the sixty-nine dollars and fifty cents to be paid to appellee, and the balance of the proceeds of the sale of the goods paid to appellant, and dismiss the parties.